PACIFIC NATIONAL CELLULAR,
Plaintiff,

v.

UNITED STATES, Defendant.

No. 95–305C.

United States Court of Federal Claims.

April 28, 1998.

---

Richard S. Myers, Myers Keller Communications Law Group, Washington, DC, attorney of record for plaintiff.

Lisa B. Donis, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David M. Cohen, Director and Frank

W. Hunger, Assistant Attorney General, attorneys of record for defendant.

## OPINION

HORN, Judge.

The above-captioned case comes before the court on the defendant's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC), and on cross-motions for summary judgment by the parties pursuant to RCFC 56. The plaintiff, Pacific National Cellular (Pacific) filed a complaint against the United States which seeks relief in the amount of $221,384.60, consisting of commitment fees, legal fees and settlement costs, plus economic loss of business for a four-year period on both claims. Plaintiff claims that the defendant violated the Paperwork Reduction Act by imposing penalties which are prohibited by that Act. 44 U.S.C. § 3507(a), (f), 44 U.S.C. § 3512 (1994). Plaintiff contends that the FCC imposed a penalty on the plaintiff when it improperly dismissed Pacific's application and caused Pacific to incur additional fees and the loss of business during the delay in the grant of the application. Plaintiff further requests relief from the defendant for an alleged violation of the Takings Clause of the Fifth Amendment to the United States Constitution.[1] Plaintiff alleges that the Federal Communications Commission (FCC) denied all economically viable use of Pacific's private contracts, specifically, firm financial commitment letters with lenders that were viable from the date of the plaintiff's lottery selection, on May 26, 1989, until the date of the grant of a non-wireline, cellular license for the Illinois 9 Rural Service Area on May 27, 1993.[2] As a result, plaintiff alleges the defendant took plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

## FACTS

During the 1980's, the FCC utilized a lottery system to issue construction permits for cellular radio telephone systems. As part of its plan to grant such permits, the FCC divided the country into service areas, some of which were designated as Rural Service Areas. In the process of creating rules for the filing of applications for construction permits, the FCC undertook administrative rulemaking procedures.

On February 19, 1988, the FCC released a Third Notice of Proposed Rulemaking (Third Notice) regarding rules for filing applications for construction permits. The Third Notice proposed a regulation, published as amended at 47 C.F.R. § 22.917(c) (1988), which required applicants to submit a "firm financial commitment" letter from lenders that guaranteed the funding necessary to build a cellular system.

The Paperwork Reduction Act of 1980, Pub.L. No. 96–511, 94 Stat. 2812 (codified as amended at 20 U.S.C. §§ 1221–23; 44 U.S.C. §§ 2904, 2905, 3501–3520 (1994)), requires federal agencies to obtain approval and a control number from the Office of Management and Budget (OMB) for any new or

---

1. Initially, the plaintiff filed a complaint which alleged a claim for relief "aris[ing] out of a violation of a federal statute." The plaintiff did not allege a takings claim pursuant to the Fifth Amendment until its opposition to defendant's motion to dismiss. Thereafter, the plaintiff filed an amended complaint on September 25, 1996 that, in addition to the claim arising out of an alleged violation of a federal statute, adds the claim for relief arising out of a violation of the Takings Clause of the Fifth Amendment. All further references in this opinion are to the amended complaint.

2. The amended complaint states:
    19. Pacific's contracts with lenders were valid contracts, a form of private property, creating rights and obligations between parties for the financing of cellular systems. In each instance, Pacific tendered consideration to the lender in exchange for a promise of financing on specified terms.
    20. In processing Pacific's RSA [Rural Service Area] application, the FCC denied Pacific of all economically viable use of its contracts with lenders during the period running from the date Pacific's lottery selection on May 26, 1989 to the date of its grant on May 27, 1993.
    21. The denial of all economically viable use of Pacific's contract advanced no legitimate state interest.
    22. By denying Pacific all economically viable use of its private contracts with lenders, Defendant took property from Pacific without just compensation.

modified collection of information requirements, and requires the agency to display the control number on any published information request. 44 U.S.C. § 3507(a), (f). Section 3512 of the Paperwork Reduction Act, however, prohibits an agency from imposing "any penalty" on a person who fails to comply with an information requirement which did not receive OMB approval or, in the words of the statute, "does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter." 44 U.S.C. § 3512.

On February 18, 1988, the FCC requested that OMB approve the collection of information requirement contained in the proposed regulation, 47 C.F.R. § 22.917(c), as required by the Paperwork Reduction Act. On March 16, 1988, the FCC received OMB approval for proposed section 22.917(c). On May 18, 1988, the FCC released its Fourth Report and Order (Fourth Report), 4 F.C.C. Red 2542 (1988), which adopted a revised section 22.917(c). In the Fourth Report, the FCC stated, "[t]he Office of Management and Budget has approved the collection [sic] of information requirement contained in this rule. The OMB control number for is [sic] collection of information requirement is 3060–0046." 4 F.C.C. Red at 2548.

However, as stipulated by the parties in the above-captioned case, the FCC had not sought OMB approval for the collection of information request as it appeared in the revised section 22.917(c) of the Fourth Report. The rule adopted by the Fourth Report was not the same rule proposed in the Third Notice. The FCC had changed the definition of acceptable funding sources and had added new subsections that established requirements for different types of contracts for financial commitments. It is these provisions that were found by the FCC to have been "so substantively and materially modified as to render the rule, as a whole, unenforceable under the PRA [Paperwork Reduction Act] because of our failure to comply with PRA requirements in adopting the rule." *In re Kent S. Foster*, F.C.C. 92–531 at 2 (1992) (footnote omitted).

Pacific is a California general partnership. On September 23, 1988, Pacific filed a number of Rural Service Area applications, including an application with the FCC for a non-wireline cellular license in the Illinois 9 Rural Service Area. The FCC conducted a lottery for the award of the non-wireline cellular license for the Illinois 9 Rural Service Area. On May 26, 1989, the FCC announced that Pacific's application was selected for award, provided Pacific could meet the license requirements.

On July 6, 1988, prior to the selection of Pacific's application, Pacific entered into a contract with Brad Peery, Inc. (Peery) for the funding commitment required by section 22.917(c). In addition to the application filed for the Illinois 9 Rural Service Area, Pacific also filed a number of other service area applications that contained a copy of the same Peery firm financial commitment letter as support for the funding commitment on those contracts. On March 15, 1990, Pacific obtained a firm financial commitment letter from Provident National Bank (Provident) for the purpose of obtaining cellular financing. Pacific submitted the Provident letter to the FCC on March 19, 1990 in an amendment to its Illinois 9 Rural Service Area application.

On June 28, 1990, the FCC notified Pacific by letter that the FCC was dismissing Pacific's application, which included the Peery commitment letter, for failure to comply with section 22.917(c) of the FCC rules. The notification indicated that the Peery letter was "not a firm financial commitment" and that the Provident letter would not be accepted as a substitute because "[t]he referenced application cannot be amended to include the new source of funding. . . ."

On August 2, 1990, Pacific entered into a new firm financial commitment letter with Peery, which it submitted to the FCC on August 7, 1990, with a petition for reconsideration of the dismissal of its application. The petition for reconsideration also submitted the Provident letter again. On February 25, 1991, Pacific renewed its commitment letter with Provident and, on November 14, 1991, submitted it to the FCC.

Pacific challenged the FCC's dismissal of its Illinois 9 Rural Service Area application by filing an appeal with the FCC, which asserted that the Paperwork Reduction Act and OMB regulations required the FCC to accept Pacific's substitute firm financial commitment letter because the FCC lacked a valid OMB control number for its financial information request, as required by the Paperwork Reduction Act. In response to Pacific's appeal, the Committee for a Fair Lottery filed an opposition stating that Pacific's appeal should not be granted. Pacific entered into a voluntary settlement agreement with the Committee for a Fair Lottery in which the Committee agreed to formally withdraw its opposition and, in exchange, Pacific agreed to pay a settlement fee of $75,000.00.

On November 8, 1991, at a time when Pacific's appeal of the dismissal of its application was still pending, OMB sent a letter to the FCC's Managing Director. OMB stated that a violation of the Paperwork Reduction Act may have occurred in Pacific's case, and requested the FCC to document its compliance with respect to section 22.917(c) or to advise OMB on the steps that the FCC had taken to remedy the apparent violation. On November 15, 1991, the FCC issued a decision, *In re Butte Cellular Group*, F.C.C. 91–345 (1991), involving a number of non-wireline, cellular applicants including Pacific. The FCC upheld its decision to reject Pacific's firm financial commitment letters as inadequate and to dismiss its Illinois 9 Rural Service Area application. *Id.* at 5. Pacific continued to appeal the administrative decision within the FCC.

While Pacific's appeal of the dismissal was still pending, the Provident financial commitment letter expired on March 15, 1992. On June 22, 1992, Pacific obtained a firm financial commitment letter from Motorola–Nortel Finance Corporation ("Motorola") and submitted it to the FCC on July 29, 1992.

On December 8, 1992, the FCC ruled that it had improperly requested information from Pacific and, therefore, that Pacific's application had been improperly denied in vio-

lation of the Paperwork Reduction Act. *In re Kent S. Foster*, F.C.C. 92–531 at 2 (1992). In addition, the FCC reinstated the processing of Pacific's application for the Illinois 9 Rural Service Area. *Id.* On May 20, 1993, Pacific submitted the Motorola firm financial commitment letter to the FCC in a formal amendment to Pacific's reinstated application. On May 27, 1993, four years after Pacific won the original lottery, the FCC granted the application and awarded a construction permit to Pacific for the Illinois 9 Rural Service Area.

## DISCUSSION

### I. Motion to Dismiss

The court first considers defendant's motion to dismiss pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction regarding plaintiff's claim under the Paperwork Reduction Act. Defendant contends that this court does not have jurisdiction to consider plaintiff's Paperwork Reduction Act claim, under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994), as amended, 28 U.S.C.A. § 1491 (Supp.1998), because the plaintiff's claims fail to rely on a money-mandating statute and because the allegations sound in tort. Plaintiff maintains that the court has jurisdiction to adjudicate its case pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), based on an alleged money-mandating statutory provision of the Paperwork Reduction Act, 44 U.S.C. § 3512.

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts that are alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4),[3] has

---

**3.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. There-

fore, precedent under the Federal Rules of Civil Procedure is relevant to interpret the rules of this

been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiffs complaint, the Tucker Act, 28 U.S.C. § 1491, requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction in the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I*); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. at 953. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States*, 17 Cl.Ct. 475, 479 (1989), *aff'd*, 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667

court. *See Jay v. Secretary DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.

1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court pursuant to 28 U.S.C. § 1491 in *Eastport Steamship Corp. v. United States,* as follows:

> Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort". But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605, 372 F.2d 1002 (footnote omitted). "If the language and effect of the statute is mandatory, then the court possesses jurisdiction to hear the case based on that money-mandating statute. If, on the other hand, the language of the statute is permissive in scope and effect, the statute does not grant jurisdiction to hear the case in this court." *Lewis v. United States,* 32 Fed.Cl. 59, 63 (1994) (citing *Rickard v. United States,* 11 Cl.Ct. 874, 876 (1987); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d 1002).

■ In the case at bar, Pacific invokes the Paperwork Reduction Act as the jurisdictional basis for the statutory claim at issue in the motion to dismiss. Defendant, however, argues that this court does not have jurisdiction over plaintiff's claim under the Paperwork Reduction Act because that act is not a money-mandating statute and, therefore, pursuant to RCFC 12(b)(1), the case must be dismissed. Plaintiff responds that because of the public protection purpose of section 3512 of the Act and the legislative history, Congress waived sovereign immunity for law suits brought alleging violations of the Act. The plaintiff also asserts that the Act can be construed as mandating payment of monetary damages to those who have incurred penalties for failure to comply with unauthorized information requests.

The conflict between the plaintiff and the defendant regarding the interpretation of the Paperwork Reduction Act must be resolved in accordance with accepted rules of statutory construction. Guidance has been offered by the United States Court of Appeals for the Federal Circuit, as follows:

> Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " "[t]he starting point in every case involving construction of a statute is the language itself." " *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375 [sic] [57 L.Ed.2d 239] (1978). Second, where a statute states what a term 'means' then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Com-*

*merce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). A court should resort to legislative history only if:

> a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee[s] of Indiana University v. United States,* 618 F.2d 736, 739, [sic] [223 Ct.Cl. 88, 94] (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82. Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Beecham v. United States,* 511 U.S. 368, 372, 114 S.Ct. 1669, 1671–72, 128 L.Ed.2d 383 (1994) (citing *King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989)). To this effect, the Supreme Court has written:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357–58, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore,* 8 How. 113, 122, 12 L.Ed. 1009 (1850))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987); *see* Sutherland Stat. Const. §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Inhabitants of the Township of Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).

In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Boise Cascade Corp. v. United States EPA,* 942 F.2d 1427, 1432 (9th Cir.1991); *see* Sutherland Stat. Const. § 46.06 (5th ed. 1992). The meaning of statutory language depends on context, and a statute should be read as a whole. *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.,* 502 U.S. at 221, 112 S.Ct. 570 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941) (L. Hand, J.)). Therefore, when reviewing the statute at issue in this case, the court must construe each section of the statute in connection with each of the other sections, so as to produce a harmonious whole.

The question of whether the Paperwork Reduction Act is a money-mandating statute appears to be novel in this court. The purpose of the Paperwork Reduction Act and the OMB regulations which implement the statute is "to reduce and minimize the burden Government paperwork imposes on the public." S.Rep. No. 96–930, at 2 (1980), *re-*

*printed in* 1980 U.S.C.C.A.N. 6241, 6242; *see* 44 U.S.C. § 3501(1) (stating that the goal is "to minimize the Federal paperwork burden for individuals, small businesses, State and local government, and other persons"). One of the cornerstones of the Paperwork Reduction Act is that it obligates all federal agencies to submit all "information collection requests" to OMB for review. *See* 44 U.S.C. § 3507.

The Act defines "information collection request" as "a written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, collection of information requirement, or other similar method calling for the collection of information." 44 U.S.C. § 3502(11). Once the Director of OMB approves the information collection requirement, the Director must ensure that a control number is assigned. *See* 44 U.S.C. § 3504(c)(3)(A). An agency may not collect information unless the request for information was submitted for approval to OMB, assigned a control number by OMB, and the number is displayed upon the information collection request. *See* 44 U.S.C. § 3507(a), (f); *see also United States v. Weiss,* 914 F.2d 1514, 1520–21 (2d Cir. 1990), *cert. denied sub nom., Gleicher v. United States,* 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991) (quoting *United States v. Smith,* 866 F.2d 1092, 1094 (9th Cir.1989)).

Section 3512 of the Paperwork Reduction Act endeavors to provide protection to those individuals who do not provide information when a control number is not present:

### § 3512. Public protection

Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.

44 U.S.C. § 3512. In addition, the legislative history of the Act emphasizes the goals and purposes of the statute as follows:

The purpose of this section [44 U.S.C. § 3512] is to protect the public from the burden of collections of information which have not been subjected to the clearance process described by section 3507. Information collection requests which do not display a current control number or, if not, indicate why not[,] are to be considered "bootleg" requests and may be ignored by the public.

S.Rep. No. 96–930, at 52 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6241, 6292. In furtherance of the goals of the Act, the statute directs that OMB's "Director shall promulgate rules, regulations, or procedures necessary to exercise the authority provided by this chapter." 44 U.S.C. § 3516.

Section 3512 of the Paperwork Reduction Act states that "no person shall be subject to any penalty" for failure to satisfy an agency's information request that "does not display a current control number assigned" by OMB. Pacific relies upon this section to suggest that Congress has waived the government's sovereign immunity to allow suits by private citizens who feel unduly burdened or penalized by the government's failure to comply with the Paperwork Reduction Act and to permit jurisdiction in this court. 44 U.S.C. § 3512. According to the plaintiff:

If a private citizen does not have the ability to enforce this provision [section 3512] in the courts, then Congress's intended purpose is frustrated. Thus, in order to realize public protection purpose of Section 3512, the statute must be read to include a waiver by Congress of sovereign immunity for violations of the PRA [Paperwork Reduction Act] which subject private citizens to a penalty.

Plaintiff argues that although the meaning of "penalty" is not defined in the statute, the definition may be derived from the broad language and the legislative purpose behind section 3512. Plaintiff cites to the legislative history and the purpose of the Paperwork Reduction Act's section 3512, which plaintiff argues is intended "to protect the public from the *burden* of collections of information which have not been subjected to the clearance process described by section 3507." S.Rep. No. 96–930, at 52 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6241, 6292 (emphasis add-

ed). Pacific also points to the Paperwork Reduction Act's definition of "burden" which includes "the time, effort, or financial resources expended by persons to provide information to a Federal agency."[4] 44 U.S.C. § 3502(3). The plaintiff interprets "burden" to include the expenditure of financial resources in response to an improper information request which violated the Paperwork Reduction Act. Plaintiff also claims that the costs incurred in appealing the dismissal and in gaining the reinstatement of its application, including settlement costs with other private citizens, were a "burden." Pacific argues that the public protection provisions of the Paperwork Reduction Act mandate the payment of money damages to Pacific for those damages that were incurred during the appeal process for the reinstatement of its application. Plaintiff asserts that due to the statutory and regulatory purposes of protecting the public from unlawful burdens, the penalty prohibition language of section 3512 can be read to include monetary resources expended by citizens in response to unlawful and unapproved information requests under the Paperwork Reduction Act.

The burdens to be avoided, as enumerated and intended by the statute and the OMB implementing regulations, are associated with the costs of information gathering, and do not include financial resources expended during the appeal of an agency decision which denied a license based upon a failure to properly respond to even an improper information request. The relief granted by the Paperwork Reduction Act for an improper information request is the right of a private citizen not to expend time, effort or financial resources to respond to an information request that has not been approved by OMB. 44 U.S.C. § 3512.

Although the statute does not provide a definition for "penalty" in its definition section, 44 U.S.C. § 3502, or elsewhere in the

statute, the defendant directs the court's attention to OMB regulations implementing the Paperwork Reduction Act which define the word "penalty." The regulations state in relevant part:

> (m) *Penalty* means the imposition by an agency or court of a fine or other punishment; judgment for monetary damages or equitable relief; or revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit.

5 C.F.R. § 1320.7(m) (1992).

The defendant points out that the definition of "penalty" in 5 C.F.R. § 1320.7(m) does not include attorney's fees and expenditures which are claimed by the plaintiff in the instant action. Defendant asserts that nothing in the Paperwork Reduction Act, including section 3512 of that Act, the legislative history of the Act, or its implementing regulations, can be construed to entitle Pacific to a remedy in the form of the monetary damages it requests from the government. The defendant suggests that Pacific already has availed itself of the available remedies under the Paperwork Reduction Act by having its application reinstated.

It is undisputed that the FCC imposed a penalty against Pacific in violation of the Paperwork Reduction Act. The agency acknowledged this fact in its decision released on December 8, 1992, on plaintiff's application for relief. *In re Kent S. Foster*, F.C.C. 92–531 (1992). The agency found that the dismissal of Pacific's non-wireline cellular license application due to Pacific's failure to respond to an information collection request to the satisfaction of the FCC was improper. This FCC act was clearly forbidden as a penalty, which is defined as a "revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit" in 5 C.F.R. § 1320.7(m). The decision issued by the FCC, on December 8, 1992, recognized the violation and remedied it by reinstating Pa-

---

4. OMB regulations reiterate the statutory definition of "burden" and enumerate several examples:

> (b) *Burden* means the total time, effort, or financial resources required to respond to a collection of information, including that to read or hear instructions; to develop, modify, construct, or assemble any materials or equip-

ment; to conduct tests, inspections, polls, observations, or the like necessary to obtain the information; to organize the information into the requested format; to review its accuracy and the appropriateness of its manner of presentation; and to maintain, disclose, or report the information.

5 C.F.R. § 1320.7(b) (1992).

cific's application for the Illinois 9 Rural Service Area license. Pacific obtained the precise relief mandated by the Congress in the Paperwork Reduction Act. Moreover, in the above-captioned case, Pacific was awarded a construction permit for the Illinois 9 Rural Service Area license on May 27, 1993.

The Paperwork Reduction Act does not incorporate a money-mandating provision, either mandatory or permissive, into the statutory language of the Act; nor does the Act, along with its legislative history, reference or indicate any intent to include a money-mandating provision. Nothing in the statute creates an entitlement in any individual or entity to collect money from the sovereign automatically or upon the completion of a responsibility or fulfillment of a duty. The fact that Congress opted not to incorporate a money-mandating provision in the statute is significant, and results in the absence of a waiver of sovereign immunity to allow lawsuits premised upon the Paperwork Reduction Act to be brought in the United States Court of Federal Claims. A lawsuit that requests relief from actions which allegedly resulted from imposition of a penalty, even if the penalty was improperly assessed, does not turn a statute which incorporates such a penalty provision into a money-mandating statute.

Finally, to the extent that Pacific's claim implies that the government acted negligently when it dismissed Pacific's license and, thus, that the actions by the government entitles the plaintiff to damages, such actions would allege tortious behavior by government officials.[5] Jurisdiction to resolve claims sounding in tort do not lie within the jurisdiction of this court. This court's jurisdictional statute, the Tucker Act, explicitly states, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994); *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir. 1993). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated the following:

> It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction . . . in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casu-*

**5.** Defendant in its motion to dismiss interpreted the wording of plaintiffs complaint to have raised a tort claim. Plaintiff, however, neither specifically alleged tortious conduct nor included a tort count in its complaint. Then, at the July 17, 1996 oral argument, the plaintiff affirmatively stated that such a claim was not being made. At the oral argument, the following colloquy occurred:

> THE COURT: Are you saying that the original actions by the FCC when they pulled the application were lawful or what are you saying?
> MR. MYERS [plaintiffs attorney]: The actions of the FCC during the process were unreasonable, but not tort[i]ous and not unlawful.
> THE COURT: Okay. So you're conceding the tort[i]ous arguments, the negligence argument? What are you—you are, you are, in trying to save yourself from this Fifth Amendment takings argument, you appear to be giving away both of the other arguments. And I'm sure that's not what you mean to do.
> MR. MYERS: No, I don't intend to do that, Your Honor.

> THE COURT: That's what it's sounding like. You've just conceded no negligence and I think you've conceded legitimacy of the process.
> MR. MYERS: Right.
> THE COURT: You've conceded both of those.
> MR. MYERS: Lawfulness of the process.
> THE COURT: So if there's a lawful process, there can be no negligence, right?
> MR. MYERS: Correct. And therefore, this is not a case in tort.
> THE COURT: Well, so that the argument having to do with negligence that was addressed in some of the briefings that the government acted negligently is not a claim.
> MR. MYERS: We're not making an argument of negligence. Therefore, the case does not lie in tort. What we're arguing is the facts that we've alleged can be fairly construed to establish that the process was indeed lawful as the defendant claimed that we must concede.
Similarly, in their motion for summary judgment, plaintiff stated that "the FCC's processing of Pacific's application was lawful. . . ."

*alty and Surety Co. v. United States*, 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981). *Shearin v. United States*, 992 F.2d at 1197 (emphasis in original).

■ Jurisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act. 28 U.S.C. § 1346(b) (1994);[6] *see also Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir.1992); *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992), *aff'd*, 11 F.3d 1069 (Fed.Cir.1993). Plaintiffs claims for monetary damages, if they could be construed to arise from alleged negligent and wrongful conduct of the defendant in the course of discharging official duties, would be claims clearly sounding in tort. *See Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Berdick v. United States*, 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); *Curry v. United States*, 221 Ct.Cl. 741, 746, 609 F.2d 980, 982–83 (1979); *Blazavich v. United States*, 29 Fed.Cl. 371, 374 (1993). Therefore, this court has no jurisdiction over the allegations made by plaintiff which may be characterized as based upon tortious conduct.

In the alternative, the defendant initially argued that plaintiff's taking allegation must be dismissed pursuant to RCFC 12(b)(4) for failure to state a claim because the elements of a constitutional taking had not been pled or asserted in plaintiff's complaint. Pursuant to RCFC 12(b)(4) "[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where the plaintiff cannot assert a set of facts which would support its claim." *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 215 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994) (citing *Chang v. United States*, 859 F.2d 893, 894 (Fed.Cir.1988)). In determining a motion to dismiss under

RCFC 12(b)(4), the court "must 'assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant.'" *Id.* (citing *Gould v. United States*, 935 F.2d 1271, 1274 (Fed.Cir. 1991)). RCFC 12(b)(4) "mirrors" Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Maniere v. United States*, 31 Fed.Cl. 410, 419 (1994). The Court is required to deny a motion pursuant to RCFC 12(b)(4) or Rule 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *see also Maniere v. United States*, 31 Fed.Cl. at 419 (citing *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993)).

As indicated above, originally the plaintiff filed a complaint which only requested relief from violation of a federal statute, the Paperwork Reduction Act. Plaintiff's allegations of an unconstitutional taking were raised by plaintiff for the first time in its opposition to defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of jurisdiction. The defendant's RCFC 12(b)(4) motion to dismiss, therefore, was offered to the court for the first time in defendant's reply to the plaintiff's opposition to defendant's motion to dismiss, even though at the time only plaintiff's initial complaint, which did not raise the allegations of an unconstitutional taking, was on file with the court.

Following the oral argument, in order to unravel the obvious confusion, the court allowed the plaintiff to amend its complaint to reflect a claim for relief premised upon the Takings Clause of the Fifth Amendment to the United States Constitution. Thereafter, the parties cross-moved for summary judgment on the takings claim. Therefore, fol-

6. 28 U.S.C. § 1346(b) provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of

property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b) (1994).

lowing amendment of the complaint, the defendant's motion to dismiss based on RCFC 12(b)(4) for failure to state a claim became moot. The takings claim became the focus of the cross-motions for summary judgment.

## II. Summary Judgment

The parties have filed cross-motions for summary judgment pursuant to RCFC 56 on plaintiff's claim that the actions by the government constituted a taking in violation of the Fifth Amendment to the United States Constitution. Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure and is similar in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); RCFC 56(c).

Rule 56(c) provides that, in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Associates, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991); *Rust Communications Group, Inc. v. United States,* 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd without op.,* 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement that is sufficient to require further fact-finding, or whether the issues that have been presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and the motion must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there should be no need for the parties to undertake the time and expense of a trial and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment is to produce evidence showing the absence of a genuine issue of material fact, which may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to Rule 56, a motion for summary judgment may succeed whether or not it is accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories, and admissions in order to demonstrate that a genuine issue for trial exists. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is

necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed. Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed. Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

Neither party has argued that there are material facts in dispute in the above-captioned case. After an examination of the record and the parties' pleadings, the court agrees. Therefore, the portion of the case dealing with plaintiff's takings claims is ripe for summary judgment.

Pacific alleges that it is entitled to compensation for the FCC's taking of the firm financial commitment letters that it had entered into with Peery and Provident. Pacific premises this entitlement on the argument that the firm financial commitment letters are contracts and, therefore, are a form of property under the Takings Clause of the United States Constitution, and that the FCC denied all economically viable use of these contracts. With regard to the regulated license application process, plaintiff concedes and states in its summary judgment motion that "the FCC's processing of Pacific's application was lawful," but insists that the four years utilized by the FCC to process plaintiff's application, during which time the application was dismissed, reinstated and then granted, "eliminated the possibility that those contracts could be performed, and thus deprived Pacific of their economic use and benefit." Pacific suggests a lack of a legitimate state interest in the FCC's "rejection" of the firm financial commitment letters during the administrative process "because the FCC ultimately accepted the Motorola firm financial commitment letter, one that was substantially similar to the [Peery and Provident] letters." In addressing damages, plaintiff recognizes that a market value "cannot be readily ascertained" for the letter contracts and instead argues that their value can be measured:

as the amount paid by Pacific to obtain them, submit them to the FCC, and defend

them. To obtain the contracts, Pacific had to pay commitment fees and legal fees for their negotiation and submission to the FCC. And Pacific had to pay more legal fees to defend the contracts, including payment of a monetary settlement to a third party challenger the FCC invited to participate in Pacific's appeal. As stated in Pacific's complaint, the total of these fees and settlement sum amount to $221,384.60 for which Pacific should be compensated.

(citation and footnotes omitted).

Defendant argues that plaintiff has failed to specify a regulation on which to base its claim of a taking and that the plaintiff has not identified how such a regulation worked to deprive plaintiff of its property. Defendant also argues that the plaintiff failed to demonstrate a conversion of their alleged property from private to public use. *See Florida Rock Indus. Inc., v. United States,* 791 F.2d 893, 899 (1986). Pacific, in its reply on the motion for summary judgment, notes that a taking may occur even if there is no appropriation of property, and quotes *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), for the proposition that a "public use" may occur when the government denies use of property "in the name of the common good." Plaintiff builds upon this argument by suggesting that the FCC's enforcement of the "firm financial commitment letter" section of OMB regulations, section 22.917(c), satisfies the "public use" requirement of a takings claim. Pacific also argues that "by no means could Pacific have contemplated— nor should it have—an economic loss of over $200,000 in addition to several years of loss [of] revenues resulting from the processing of its application." Plaintiff argues that "the regulation here gave no notice that Pacific might receive the kind of substantial interference with its reasonable, investment-backed expectations that it" was allegedly subjected to by the government. Plaintiff concludes with the contention that the general public would have received the benefits that section 22.917(c) intended if the FCC had granted the license "in the first instance." Therefore, plaintiff argues that the burden placed upon Pacific did not justify the public benefit and, thus, constitutes a taking.

The defendant argues that "any economic loss Pacific has suffered because of the length of time the Government took in granting it a cellular license is something it [Pacific] knew could happen and which its financial agreements contemplated," as is evident in that "all of the agreements were expressly contingent upon Pacific receiving a license." The defendant contends that the FCC actions were not an interference with reasonable investment expectations when those actions were part of a preexisting regulatory process known to the applicant prior to the acquisition of property. Moreover, as defendant points out, there was no guarantee that plaintiff or anyone else would be granted a license within a specific time period. The defendant emphasizes that the costs associated with entering into a firm financial commitment letter with a lender is "simply a cost of doing business" as all of the financial backing was contingent upon Pacific getting a license. The government points out that Pacific could have incurred the expenses which plaintiff claims as damages in this action without ever obtaining the Illinois 9 Rural Service Area license. Defendant argues that the practical outcome of plaintiff's takings claim "means that *any* cellular lottery applicant who was asked for additional information pursuant to 47 C.F.R. § 22.917, and who incurred additional expenses relating to that request now has a legitimate takings claim." (emphasis in original). According to the defendant, the FCC's demand for additional information and the delay in granting the cellular license to Pacific arose from an improper administrative proceeding, which was reversed by the FCC. Thus, the defendant argues "that claims of a taking based upon alleged 'unlawful' Government acts do not constitute a valid claim of constitutional taking, but, if they are anything, are challenges to the propriety of Government action that sound in tort," and are not within this court's jurisdiction.

The Tucker Act grants the United States Court of Federal Claims jurisdiction to entertain claims alleging that the government has taken private property for public use in violation of the Fifth Amendment of the United States Constitution. The United States Supreme Court has declared: "[i]f

there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Claims Court] to hear and determine." *Preseault v. ICC,* 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *see Narramore v. United States,* 960 F.2d 1048, 1052 (Fed.Cir.1992); *Perry v. United States,* 28 Fed.Cl. 82, 85 (1993).

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "[n]or shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of the Fifth Amendment is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). There is a "clear principle of natural equity that the individual whose property is thus sacrificed [for the public good] must be indemnified." *Pumpelly v. Green Bay & Mississippi Canal Co.,* 13 Wall. 166, 80 U.S. 166, 179, 20 L.Ed. 557 (1871).

There exists, however, no precise analytical framework or set formula for ascertaining exactly when the impact of a government regulation requires compensation by the government. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Determining whether a taking has occurred is an ad hoc factual inquiry that incorporates several factors identified by the Supreme Court as being particularly relevant and significant: (i) the character of the government action, (ii) the economic impact of the regulation, and (iii) the extent that the regulation interferes with reasonable investment-backed expectations. *Id.* at 124, 98 S.Ct. 2646; *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). *See also Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 643–47, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). Subse-quently, in *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), the Supreme Court addressed a takings claim and focused on the reasonable investment-backed expectations prong of the *Penn Central* factors to deny a takings claim. *Id.* at 1005, 104 S.Ct. 2862. In that case, the Supreme Court relied upon the specific regulatory process that was in use by the government for evaluating data submitted to the government and found that the claimant could not validly expect that the data would be protected and not disclosed. *Id.* at 1013, 104 S.Ct. 2862. The Supreme Court, therefore, denied plaintiff's takings claim. *Id.; see also Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust,* 508 U.S. at 645–46, 113 S.Ct. 2264.

In the instant action, the plaintiff claims that their financial commitment letter contracts with third-parties were property which was taken by the government. However, takings law dictates that "frustration in performance of even an existing contract is not a taking of contract rights, *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), still less a hope of future profitable contracts." *Florida Rock Indus., Inc. v. United States,* 791 F.2d at 903. In *Omnia Commercial,* the Supreme Court found that "[a]s a result of this lawful governmental action the performance of the contract was rendered impossible. It was not appropriated, but ended." 261 U.S. at 511, 43 S.Ct. 437. The court closed by emphasizing that "[f]rustration and appropriation are essentially different things." *Id.* at 513, 43 S.Ct. 437. In the instant case, Pacific not only obtained its FCC license as part of the regulatory process, but ultimately utilized a letter contract that plaintiff claims was appropriated. *See Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. at 224, 106 S.Ct. 1018 ("This is not to say that contractual rights are never property rights or that the Government may always take them for its own benefit without compensation. But here, the United States has taken nothing for its own use, and only has nullified a contractual provision ... by imposing an additional obligation that is otherwise within the power of Congress to impose."). The argument by Pacific that the letter contracts were taken

by the government is a claim of "frustration" at best and does not support a takings claim.

Moreover, the plaintiff's claim also is without merit because the plaintiff voluntarily entered into an arena with pervasive governmental regulation. *See Mitchell Arms, Inc. v. United States,* 7 F.3d 212, 216–17 (1993), *cert. denied,* 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994) (denying a claim that a property interest was created when plaintiff contracted to purchase goods with the expectation of importing them pursuant to permits that were revoked); *see also B–West Imports, Inc. v. United States,* 75 F.3d 633, 638 (Fed.Cir.1996). In *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), the Supreme Court reviewed the nature of a takings allegation in a real property case involving a permitting process:

> the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking.... A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired.

*Id.* at 126–27, 106 S.Ct. 455. The communications arena is heavily regulated by the federal government, and by the FCC in particular. An entity, such as Pacific, elects to enter that arena by application and should expect continued regulation by the FCC during the processing of its grant application. Pacific cannot now claim that it was not keenly aware of the administrative and regulatory framework and the existing procedures from the outset of its first lottery application for a cellular, non-wireline license.

The allegations by Pacific that the defendant's rejection of its Peery and Provident letter contracts or that any other action by the defendant constituted a compensable taking of property compensable under the Fifth Amendment is not valid. The defendant's rejection of plaintiff's early applications was based on its conclusion that Pacific had failed to comply with the 47 C.F.R. § 22.917(c) part of the regulatory process. This rejection, although ultimately reversed by the FCC, did not result in a taking within the meaning of the Fifth Amendment to the United States Constitution.

### CONCLUSION

Therefore, after careful review of the submissions and arguments that were presented by each of the parties on the defendant's motion to dismiss and on the cross-motions for summary judgment, the court reaches the following conclusions. On the defendant's motion to dismiss, the plaintiff has failed to demonstrate that the Paperwork Reduction Act is money-mandating statute. Therefore, the defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED**. On the cross-motions for summary judgment, no material issues of fact exist and the plaintiff has failed to demonstrate a taking pursuant to the Fifth Amendment to the United States Constitution. Therefore, the defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**